# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | Cause No. 2:15-cr-16-WTL-CMM |
| DOUGLAS M. VEACH, ) | |
| Defendant. ) | |

## ENTRY ON MOTION TO SUPPRESS EVIDENCE

This cause is before the Court on Defendant Douglas Veach's Motion to Suppress Evidence (Dkt. No. 85). Specifically, Veach seeks to suppress the evidence that was seized on August 6, 2015. The Court held an evidentiary hearing on Veach's motion on November 29, 2017. Pursuant to Federal Rule of Criminal Procedure 12(d), the Court now states its findings and conclusions. For the reasons explained herein, Veach's Motion to Suppress Evidence is **DENIED**.

## I. HEARING EVIDENCE

On August 6, 2015, Douglas Veach was arrested by detectives in Putnam County, Indiana. Two issues are before the Court: (1) whether there was a valid warrant for Veach's arrest, and (2) whether the search of a duffel bag was unconstitutional. At the evidentiary hearing held by the Court, the Government presented testimony from two witnesses and introduced six exhibits.

### A. The Warrant

Christopher Mayhugh, a state parole agent with the Indiana Department of Correction in

Marion County, testified at the hearing. Mayhugh has been a parole agent for adult offenders since 2006, and he currently is assigned to Veach's case. Veach's former parole agent was Brian Matthys, but Veach's case was transferred to Mayhugh because of Veach's pending criminal cases in federal and state court.

Mayhugh explained that when a parolee is arrested for a new case or a new criminal case is filed against a parolee, a report and request for a warrant is sent to the Indiana Parole Board ("Board").[1] The report includes the initial parole violation, which consists of the court case if it is available, or, if the case is not available, the arresting officer's report or probable cause affidavit. The Board reviews the report and request to see if a case has been filed and how serious the allegations are. If the Board determines that a warrant should issue, the Board sends a warrant to the parole agent.

If the parolee is being held in jail, the parole agent sends the warrant to the jail where the parolee is being held. The parole agent in the county where the parolee is being held will serve the warrant on the parolee. A copy of the warrant is given to the jail. After the warrant is lodged, the parole agent will clear the warrant from the National Crime Information Center ("NCIC").

Turning to the specifics of Veach's case, Mayhugh testified that in July 2014, a warrant was requested for Veach because of a pending criminal case that Veach had in Hendricks County. The Court admitted Government's Exhibit 4, a copy of the warrant for retaking offender issued for Veach by the Indiana Parole Board on August 4, 2014. Mayhugh explained that Exhibit 4, the warrant for retaking Veach, did not have a delinquency date listed because Veach was not delinquent; that is, he had not failed to report to his supervising agent when the warrant

---

[1] Indiana Code 11-13-3-8 describes the procedure for an alleged parole violation.

was issued. The Court also admitted Government's Exhibit 5, a copy of the transmittal filled out by Matthys on July 31, 2014, and signed by a member of the Board on August 4, 2014, which had a recommendation that a warrant be issued for Veach, and the initial parole violation submitted by Matthys to the Board.

The warrant depicted in Exhibit 4 was served by a parole agent on Veach while Veach was at the Hendricks County Jail. Mayhugh explained that the warrant was sent to an agent at Parole District 1 and a copy was faxed to the Hendricks County Jail. When a warrant for parole is issued for the arrest of someone who is in jail, the parole agent follows the case and the parole warrant is put in the person's jacket at the jail. If the person posts bond on the underlying case, the jail should contact either the parole district the jail is in or contact the parole office to have the person transferred back to a Department of Corrections facility.

The proper protocol was not followed in Veach's case. After Veach's arrest in July 2014 in Hendricks County, he posted bond in the Hendricks County case. Veach also had a pending case out of Boone County. Before the Hendricks County jail moved Veach to Boone County, jail personnel looked in Veach's jacket to ensure that the warrant was still there. Jail personnel went to NCIC and did not see the warrant. They then erroneously marked in the jacket that the warrant was not valid. However, the warrant was no longer present in NCIC because a warrant is removed after it is served; the fact that the warrant was no longer in NCIC did not mean that it was no longer valid. Jail personnel should have contacted Mayhugh's office to inquire whether the warrant was still valid.

Upon his release from Hendricks County, Veach was transported to Boone County for another warrant on an unrelated case. Veach posted bond from the Boone County case. Because

Boone County jail personnel did not have a copy of Veach's parole warrant due to Hendricks County's mistake, Veach was released on January 13, 2015. After being released, Veach did not report to parole, and parole did not know where he was. In fact, parole believed that Veach was still in Hendricks County Jail; no one in the parole office knew that he had been released. The parole office finally learned that Veach had been released when a prosecutor from Hendricks County went to speak with Veach about his case.

On July 14, 2015, after the parole office learned that Veach had been inadvertently released, a transmittal was sent to the Board requesting that the warrant be amended for Veach. *See* Gov. Exhibit 3. On that same date, the Board issued an amended warrant for Veach based on this transmittal and request. *See* Gov. Exhibit 2. The parole office also made attempts to find Veach. The reissued warrant showed up as active in the NCIC database on the date it was reissued.

Eric Adams, a detective with the Lebanon Police Department who is assigned to the Hamilton/Boone County Drug Task Force, also testified at the hearing. Adams' testimony was relevant to both the warrant issue and the duffel bag issue. Adams explained that Veach had become the target of an investigation. Adams was unable to recall how he first learned that there was an active warrant for Veach, but he had learned of the active warrant in July 2015. Adams verified the warrant by running it through NCIC and the Indiana Data and Communications Systems ("IDACS").

Adams then applied for a ping warrant, which allows law enforcement to obtain a location of a cell phone, for Veach's cell phone to try to learn Veach's whereabouts. In the application for the ping warrant, Adams referred to the arrest warrant. A ping warrant was issued

4

by a Boone County judge.

Adams began receiving location information for Veach's cell phone on the night of August 4, 2015. Adams worked with the Putnam County Sheriff's Department and the Clay County Sheriff's Department to create a plan to take Veach into custody on August 6, 2015. Adams had received information from a confidential informant who had previously provided information that had been corroborated that Veach did not intend to go back into custody and that Veach had guns or access to guns.

On August 6, 2015, officers were able to locate Veach in the area of the Holiday Inn Express in Putnam County. Officers verified that Veach and an acquaintance of Veach were in that hotel. When Veach and another person came out of the hotel room and left the hotel, they were taken into custody in the hotel's parking lot. Adams testified that a black duffel bag was on Veach's shoulder when he came out of the hotel. Veach dropped the bag when he was ordered to the ground.

An in-car camera from a sheriff's deputy patrol vehicle arrived after Veach was lying on the ground and filmed the events that occurred after that point. The Court admitted the video as Government's Exhibit 1. The video first shot of Veach showed him lying on the ground. A person in a red shirt was also lying on the ground, and a black duffel bag was very near Veach's feet. Seven law enforcement officers initially were present. Adams explained that he placed Veach in hand restraints, with his hands cuffed behind his back. Adams had to use two sets of handcuffs that had been connected to provide a longer chain due to Veach's size. When Veach was helped to his feet, the duffel bag remained within a few feet of him on the ground, with Adams between Veach and the duffel bag. Adams weighed about 190 pounds, while Veach

5

weighed about 250 pounds.

While law enforcement officials searched Veach after he was standing, Veach was asked whether he had any guns on his person, and he did not respond. Law enforcement officers did not find a gun on Veach's person. Adams found the fact that Veach did not respond to the repeated questions as to whether there was a gun significant and very abnormal; it made Adams think that there was a possibility that there was a gun somewhere. Adams testified that the duffel bag was within two to three feet of Veach, which Adams characterized as reaching distance for Veach, especially because Veach had more mobility with his hands by his hips due to the use of two sets of handcuffs. Adams, who was the only person standing between Veach and the duffel bag, immediately went to the duffel bag and searched it.

The duffel bag was zipped closed before Adams opened it. He found a gun immediately and, going through the bag, also found what he believed were drugs. The bag was then moved inside the doorway of the hotel, and Veach was placed in the back of a patrol car.

In September 2015, the grand jury indicted Veach for possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1); possession of a firearm as a previously convicted felon in violation of 18 U.S.C. § 922(g); and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). Dkt. No. 1.

## II. <u>DISCUSSION</u>

In his Motion to Suppress Evidence, Veach raises two issues. First, he argues that there was no valid warrant for his arrest. Second, he challenges the search of the duffel bag.

### A. **Veach's Arrest**

Veach first argues that there was no valid warrant for his arrest. Based on the testimony

of Parole Agent Christopher Mayhugh, which the Court finds credible, and Government Exhibits 2-6, the Court finds that there was a valid arrest warrant for Veach when he was arrested on August 6, 2015. Specifically, the warrant for retaking offender was reissued for Veach on July 14, 2015, after Hendricks County Jail personnel erred by marking the parole warrant as invalid and failing to send it with Veach's jacket that went to Boone County. Adams learned of the existence of this warrant in July 2015, and he verified the validity of the warrant in NCIC and IDACS.

Further, even if no valid warrant had existed, Adams acted upon a reasonable good-faith belief that a valid warrant existed. The exclusionary rule applies only where it might result in appreciable deterrence of police misconduct. *See Herring v. United States*, 555 U.S. 135, 141 (2009). The Supreme Court has found that a good-faith exception existed where the police reasonably relied on erroneous information concerning an arrest warrant in a database maintained by judicial employees, *Arizona v. Evans*, 514 U.S. 1, 14 (1995), and where police employees erred in maintaining records in a warrant database, *Herring*, 555 U.S. at 137. Here, all the evidence presented points to the existence of a valid warrant for Veach's arrest, but, even if it did not, Adams' testimony—which the Court finds credible—establishes that a good faith exception to the exclusionary rule would apply.

### B. Search of the Duffel Bag

Next, Veach argues that the warrantless search of the duffel bag violated the Fourth Amendment. Warrantless searches are generally considered unreasonable unless they fall within a few specific established and well-delineated exceptions. *Katz v. United States,* 389 U.S. 347, 357 (1967). The Government argues that the search of the duffel bag was incident to Veach's

arrest. "The 'search incident to arrest' exception rests not only on the heightened government interests at stake in a volatile arrest situation, but also on an arrestee's reduced privacy interests upon being taken into police custody." *Riley v. California*, 134 S. Ct. 2473, 2488 (2014).

A search incident to a lawful arrest is a well-established exception to the Fourth Amendment's warrant requirement. *See Arizona v. Gant*, 556 U.S. 332, 338 (2009). This exception allows an officer to search "the arrestee's person and the area 'within his immediate control,'" defined as "the area from within which he might gain possession of a weapon or destructible evidence." *Chimel v. California*, 395 U.S. 752, 763 (1969). As the Supreme Court explained in *Gant*, the "immediate control" requirement "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy." 556 U.S. at 339. "If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search incident-to-arrest exception are absent and the rule does not apply." *Id.*

Here, the duffel bag was within a few feet of Veach, who was standing. Moreover, Veach, although handcuffed with his hands behind his back, had more mobility than typically possessed by a person in handcuffs due to the fact that two sets of handcuffs were connected, leaving his hands near his hips. Although multiple officers were present at the scene, Adams, who weighed significantly less than Veach, was the only officer standing between Veach and the duffel bag. Further, Adams had reason to be concerned for their safety. Veach failed to respond to questioning about whether he had a gun, and a confidential informant who had previously provided information that had been corroborated had provided information that Veach had access

8

to guns and did not intend to go back into custody.

The search of the bag occurred immediately after Veach was arrested. Further, Adams found the gun immediately upon unzipping the bag; it was readily accessible rather than being further concealed within the duffel bag or behind a closed cabinet door like the zipped bag at issue in *United States v. Tejada*, 524 F.3d 809 (7th Cir. 2008). Given this set of circumstances, it is conceivable that Veach could have gotten past the officers at the scene; opened the duffel bag with his hands, which while cuffed, were not immobilized; and accessed the gun, which was immediately visible once the bag was opened. Given the totality of the circumstances, the Court finds that the duffel bag was within Veach's immediate control, and the search was justified as a search incident to arrest.

### III. CONCLUSION

For the foregoing reasons, Veach's Motion to Suppress Evidence (Dkt. No. 85) is **DENIED**.

**SO ORDERED: 12/21/17**

*[signature: William T. Lawrence]*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification